630 P.2d 1228

The CITIZENS BANK OF CLOVIS a corporation, as Personal Representative of the Estate of Jack Spencer, Deceased, Plaintiff-Appellant,

v.

Carl WILLIAMS and Anna Jean Williams, Defendants-Appellees.

No. 13082.

Supreme Court of New Mexico.

June 3, 1981.

Rehearing Denied July 22, 1981.

Lynell G. Skarda, Clovis, for plaintiff-appellant.

Dan B. Buzzard, Clovis, Pickard & Singleton, Lynn Pickard, Santa Fe, for defendants-appellees.

## OPINION

FEDERICI, Justice.

This is an action brought by Citizens Bank of Clovis, plaintiff-appellant (Bank), as personal representative of Jack Spencer (Spencer) against defendants-appellants Carl Williams and Anna Jean Williams (Williams), asking for a partnership accounting. The trial court held that the land belonged to Williams subject to a lien in favor of Spencer's estate in the amount of one-half the value of the land less payments made by Williams. The judgment ordered Williams to pay Spencer $32,705.72 plus interest. The Bank appeals and Williams cross-appeals. We affirm.

Williams and Spencer were old friends of many years standing and, more recently, partners in a ranching business. As partners, they orally agreed to split profits and losses on a fifty-fifty basis. Spencer provided most of the capital and Williams did most of the work. . Though Williams was the managing partner, he and Spencer kept separate records. In 1965, the partnership bought a section of property in Curry County for $80,000 with money provided mostly by Spencer. It appears that the partnership bought the land at a price less than other bids received by the seller because the seller wanted Williams to own the land. It was deeded solely to Williams, who concedes he held the land as a partnership asset. In 1969, the partnership dissolved amicably and all its assets were divided evenly except for the land,. which, according to Williams, was then worth $144,000. A deed from Spencer to Williams and a note from Williams to Spencer for $150,000, secured by a mortgage on the land, were prepared at Spencer's direction, but none of the documents were delivered, signed by Williams, or recorded. At trial, testimony was introduced by Williams and his wife showing that he refused to sign the note

and mortgage because they indicated Spencer owned three-fourths of the land while in fact Spencer claimed only one-half under a previous oral agreement with Williams to split the assets of the partnership evenly. As a result, Williams and Spencer agreed that Williams would pay Spencer $9,000 per year, though it is disputed as to how long this was to last, or exactly what the payments represented. Williams paid Spencer $9,000 per year until Spencer died in 1977, which money Williams called and designated on his tax return as "interest." The oral testimony indicates that this figure represented six percent of $150,000 (the value of the land), as claimed by the Bank and that Williams and Spencer orally agreed that if he made these payments until Spencer died, Williams would hold the land free from any claims by Spencer or his heirs. The two remained close friends until Spencer's death. Williams helped take care of Spencer in his last years. Spencer claimed the unsigned note as an asset in his will, executed in 1973, and directed that the note and mortgage not be foreclosed and that his estate be paid $9,000 a year until Williams and his wife both died.

The court below found that the partnership agreement between Williams and Spencer provided. that upon dissolution, the assets of their partnership were to be divided evenly regardless of their respective capital contributions; that this agreement was valid even though it was oral; and that the land would have been divided this way except that the partners further agreed, as part of an attempted "wrap-up" of the partnership, that Williams would buy out Spencer's one-half interest in the land. The court rejected Williams' contention that he could accomplish this by paying $9,000 per year until Spencer's death. It found that there had been no meeting of the minds as to the total amount due Spencer, the interest due, or the time or method of payment. The court found that Spencer's interest in the land in 1969 was $72,000 (one-half the value of the land) and applied the annual payments to interest at six percent, the

legal and regular rate at that time (see Section 56–8–3, N.M.S.A.1978), and to the reduction of the principal amount owed, so that on December 31, 1977, the principal amount owed by Williams to Spencer had been reduced to $32,715.72. Accordingly, the court ordered that the land was to be owned by Williams subject to a lien in favor of Spencer's estate in that amount, plus interest from December 31, 1977 at six percent per annum. It gave Williams ninety days to pay. The Bank appealed, claiming that the amount of the lien should have been $114,067.65, the amount of Spencer's interest in the land based on his capital contributions to the purchase of the land plus his share of the increase in price since its purchase.

The court below appears to have found two separate agreements between the partners: that the assets of the partnership would be divided equally, and that Williams was to buy out Spencer's interest in the land. We note that under the Uniform Partnership Act, Sections 54–1–1 to 54–1–43, N.M.S.A. 1978, the assets of a partnership are distributed on dissolution in such a way that each partner receives back the capital he has contributed plus his share in the surplusage, *absent an agreement by the parties to distribute the assets in a different way.* § 54–1–40. The Bank claims that the first agreement has not been proved so the assets must be distributed according to capital contributions. The Bank also claims that the second agreement has not been proved and that the annual payments should not have been applied to the principal amount owed to Spencer, so that Williams still owes Spencer the same sum he owed him in 1969.

■ The Bank contends that Williams was the managing partner, he owed a fiduciary duty to Spencer, and he should have kept better partnership records. Because there were no records of the alleged oral agreements, there is a strong presumption against their existence. Williams can only overcome this presumption by "clear and convincing" evidence. It is true that partners occupy a fiduciary duty towards one another. *Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970); *Rogers v. Stacy,* 63 N.M. 317, 318 P.2d 1116 (1957). Perhaps Williams should have kept better records. But if, as he claims, the profits and assets of the partnership were to be divided evenly, the records would have been fairly simple. There is no evidence that Spencer ever complained that the records were inadequate while he was alive. On the contrary, he wanted to keep his own records and objected strongly when Williams tried to interfere. The fiduciary duties between partners do not necessarily raise the level of proof of partnership agreements from ordinary proof to one of "clear and convincing" proof. But whatever the measure may be, the trial court found, based upon substantial evidence, that the oral agreement was entered into by the parties. We cannot weigh the evidence on appeal, we can only review it in a light most favorable to the prevailing party. *Duke City Lumber Company, Inc. v. Terrel,* 88 N.M. 299, 540, P.2d 229 (1975). We have reviewed the record and it supports the findings of the trial court.

■ The Bank contends that, in any event, the partnership agreement should have been in writing since it involved land. Otherwise, the partnership agreement is void as violating the statute of frauds. Under the New Mexico Uniform Partnership Act, an interest of a partner in the partnership is personal property and not real property, even if land is one of the assets. § 54–1–26. *See* Annot., 80 A.L.R.2d 1107 (1961). Furthermore, the New Mexico Uniform Partnership Act applies only when the partners have not made a contrary agreement. *See generally* § 54–1–18. The trial court found that the transaction constituted a partnership transaction and enforced the oral agreement covering the assets, including the land. In this the trial court correctly applied existing law. .

■ It is generally recognized that partnership agreements need not be formal. As one court has stated:

[T]he terms of a partnership agreement need not be formally expressed, but may

be inferred or established, in whole or in part, from the acts of the parties. (Citations omitted.)

*Medd v. Medd*, 291 N.W.2d 29, 34 (Iowa 1980).

This general principal applies with equal force to agreements to divide assets upon dissolution without repayment of capital contributions. *Petersen v. Petersen*, 284 Minn. 61, 169 N.W.2d 228 (1969). In *Petersen*, the court said:

> It is also clear from past cases that a contrary agreement of the type referred to above [one varying the statutory rules of settling partnership accounts] need not be in writing. Where it is not written it is in effect an implied-in-fact contract and may be established in the same manner as any other such contract. (Citation omitted.)

*Id.*, 169 N.W.2d at 230. *See also Smiley v. Smiley's Adm'x*, 112 Va. 490, 71 S.E. 532 (1911); *compare Rossi v. Rossi*, 154 Colo. 21, 389 P.2d 191 (1963).

If there was ever a case which called upon the trial judge to exercise his discretion and apply equitable powers, it is this one. The record is replete with testimony that Spencer wanted Williams to be taken care of; that Spencer felt Williams eventually should own the ranch; that Williams and his wife took care of Spencer and the ranch for many years; that the monies in the Bank were divided when the partnership bank account was closed; and that payments of some type were made each year by Williams based on the agreement, even though the greater portion of the payments may have been interest. On the other hand, some very imposing arguments are made by the Bank. However, we feel that as an appellate court, we should not retry this case. The trial judge hears the witnesses in person and has the opportunity to observe their demeanor and manner of testifying and has a much better grasp of the evidence in its entirety than we have. Based upon a cold record on appeal and absent an erroneous application of the law, we will not interfere with the trial court's decision. Under the circumstances and facts in this case, we believe the trial court arrived at a correct result.

We take this opportunity to compliment the attorneys for both parties for their clear and forceful presentation in oral argument, and for the excellent briefs submitted to this Court.

In view of the result we have reached on these issues, an opinion on the remaining issues is deemed unnecessary.

The trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.