Charles R. COHOON, Respondent,

v.

Carol COHOON, et al., Appellants.

No. 42889.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 23, 1981.

Jack Gallego, Robert E. Edwards, Troy, for appellants.

Charles W. Neidner, St. Charles, for respondent.

REINHARD, Judge.

These appeals arise out of a judgment against the plaintiff to have certain transactions set aside as fraudulent conveyances and a judgment against the defendants on a counterclaim for an accounting. Plaintiff and defendants appeal.

The parties to this action, plaintiff Charles Cohoon, and defendants Carol Herring, Herschel Lawhorn and Clara Lawhorn, entered into an oral farming partnership in 1966. Carol is the Lawhorn's daughter and was married to Charles. The parties agreed that they were to share equally in partnership profits and losses, and to own partnership assets equally.

The parties contributed various assets to the partnership at its inception and throughout its existence. At the beginning of the partnership, the Cohoons contributed $8,000 in cash with $2,000 of that amount constituting either a loan or a gift from the Lawhorns. From 1966 to 1969, Charles worked at McDonnell-Douglas and his earnings of $23,000 a year were deposited in the partnership account. Carol was employed at various times during the existence of the partnership and her earnings were also deposited in the partnership account. The

Lawhorns initially contributed $42,000 in cash, and farm machinery and equipment valued at between $16,000 and $40,000. All of the parties spent various amounts of time maintaining and operating the partnership farm. The living expenses of the Lawhorns, the Cohoons, and their two children were paid from the partnership account.

In May 1975, the marriage of Carol and Charles Cohoon was dissolved. As part of the property settlement, Carol agreed to pay Charles $12,000 for his interest in two buildings in Elsberry, Missouri. After the dissolution of the Cohoon's marriage, the parties decided to terminate the partnership and sell the assets. The farm equipment, livestock and 273 acres of partnership land were sold. After satisfying all debts, the balance was divided equally among the parties. At this time, the defendants demanded and Charles consented to allow a deduction of $3,365 from his share representing money previously received from the redemption of partnership stock. The parties also executed a contract for the sale of the remaining two tracts of partnership land containing 83 acres for $40,000.

On October 13, 1975, Carol conveyed the two buildings in Elsberry, Missouri, and her interest in the contract price for the two tracts of partnership land to her parents by quitclaim deeds. The next day she also quitclaimed her interest in a house in Elsberry, Missouri to them. Finally, in April 1976, Carol assigned a promissory note for $31,250 to her parents.

In November 1975, Charles filed suit against Carol for the $12,000 owing under the separation agreement, and in September 1976, the circuit court of Lincoln County, Missouri rendered judgment against her. Charles was unable to find any asset owned by Carol on which to execute. Therefore, he brought the present action to set aside the four transfers made by Carol to her parents and the defendants counterclaimed for an accounting. The trial court rendered judgment against plaintiff on his petition and against the defendants on their counterclaim.

■ The scope of review in a court-tried case is set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) which provides that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

■ The first issue presented on appeal is whether the trial court erred in denying an accounting as demanded by the defendants. A suit for an accounting must be tried in two stages. The first stage is to determine whether there is any right to an accounting. Only if the trial court determines that there is a right to an accounting does the trial proceed to the second stage which is the actual accounting. *State ex rel. Rowlett v. Wilson*, 574 S.W.2d 376, 378 (Mo.1978). In the present case, the second stage was never reached as the trial court held that defendants were not entitled to an accounting because the parties had settled the partnership affairs when they divided the sale proceeds of the partnership assets. Such a private settlement precludes an accounting. *Smith v. Lewis*, 89 S.W.2d 563 (Mo.App.1935). Considering the evidence that throughout the partnership the parties contributed property, money and time in varying amounts with no specific agreement as to refunding any original contribution, that the partnership agreement provided for equal ownership and division of the profits, that the parties participated in some degree in the sale of the assets, that the receipts from the sale of the partnership assets were distributed equally, and that there was no demand made for other specific amounts, we find that there was substantial evidence to support the trial court's judgment.

■ The defendants argue that distribution of partnership assets is provided for by § 358.400, RSMo 1978, Uniform Partnership Act. However, this provision is made specifically subject to any agreement to the contrary. Thus, where a private agreement

and settlement for consideration is found, the Uniform Partnership Act does not determine distribution. *District of Columbia v. Riggs Nat'l Bank of Washington D.C.,* 335 A.2d 238, 243 (D.C.App.1975); *Peterson v. Peterson,* 284 Minn. 61, 169 N.W.2d 228, 230 (1969).

The second issue on appeal is whether the transfers by Carol to her parents constituted fraudulent conveyances with respect to the $12,000 she had agreed to pay Charles as provided in the separation agreement. The essential elements of a cause of action for a fraudulent conveyance include (1) a conveyance or assignment (2) of goods, chattels, things in action or interest in land (3) with the intent to hinder, delay or defraud creditors. § 428.020, RSMo 1969. The sole element in question in this case is Carol's intent in making the transfer. Since intent to defraud is rarely shown by direct evidence, Missouri courts have recognized that there are certain circumstances referred to as badges of fraud which so frequently attend conveyances to hinder, delay or defraud creditors that they may be employed to determine the presence of fraud. These badges of fraud are: conveyance to a near relative; a conveyance in anticipation of suit; a transfer of all or nearly all of a debtor's property; insolvency; unusual clauses in instruments or unusual methods of transacting business; retention of possession by the debtor; inadequacy of consideration; and the failure to produce rebutting evidence when the circumstances surrounding the transfer are suspicious. *Allison v. Mildred,* 307 S.W.2d 447, 454 (Mo.1957); *Harrison v. Harrison,* 339 S.W.2d 509, 516 (Mo.App.1960). Although none of the badges by itself establishes fraud, a concurrence of several of the badges raises a presumption of fraud.

Analyzing each of the four transfers individually, we conclude that only one should be set aside as constituting a fraudulent conveyance. With respect to the transfers by Carol of her interest in the two buildings in Elsberry, Missouri, her interest in the two tracts of partnership land containing 83 acres, and her interest in the

house in Elsberry, Missouri, we find sufficient evidence in the record to support the court's judgment. Carol testified that the house in Elsberry, Missouri was purchased by her parents and that her name was placed on the deed with theirs merely to acquire financing. Charles also admitted that Carol's parents purchased the home. Further, he did not know why her name was on the deed and admitted that she was to have no real interest in the property.

Peter Grewach was Carol's attorney in the dissolution of marriage proceedings. He prepared and acknowledged Charles' signature on the deed conveying his interest in the two buildings in Elsberry, Missouri to Carol. While Carol was in his office, Charles was outside in his automobile. Mr. Grewach testified:

I took the deed out there. When I got out there he wanted to know if there was another deed transferring the property from Carol to Lawhorns. He wanted to see that before he signed this. I said there was. I went back in my office, got the other deed and showed it to him and he said okay and he signed his deed and I took it back inside.

On cross-examination, Charles testified that Mr. Grewach showed him the deed and that he approved it.

Further, Mr. Grewach was shown plaintiff's exhibit 5 which was a quitclaim deed conveying Carol's interest in the two tracts of partnership land containing 83 acres to her parents. He clearly remembered that on the morning in which he had gone out to Charles' car, he had shown him this deed.

Finally, the evidence is undisputed that on the date of these three transfers, Carol still had sufficient property to ratify the $12,000 obligation to Charles. Thus, based upon the record before the trial court, we believe that the trial court's determination that these three conveyances were not fraudulent is supported by substantial evidence.

The other challenged transfer involved a $31,250 note made payable to Carol. In April 1976, after Carol had been sued by Charles for the $12,000 owing under the separation agreement, she assigned her in-

terest in the note to her parents. By her own admission, this conveyance made her insolvent. The defendants argue that the transfer was in consideration for amounts owed to the Lawhorns based upon an improper distribution of partnership assets. However, the earlier determination that defendants were not entitled to any reimbursement but that the distribution of partnership assets constituted a settlement precludes this argument. Thus, since no debt existed with respect to the partnership assets, there was no consideration to support the transfer. Based upon these indicia of fraud and there being no other countervailing argument supported by evidence legitimizing the transfer, the court erred in determining that this conveyance was not fraudulent.

The judgment of the trial court is hereby affirmed in all respects except as to the judgment against the plaintiff on the petition to set aside as fraudulent the transfer of the $31,250 promissory note.

The cause is remanded to the trial court with directions to subject the $31,250 promissory note to the rights of Charles Cohoon to the extent of his judgment in the amount of $12,000.

CRIST, P. J., and SNYDER, J., concur.