798 P.2d 160

**Carl BASSETT, et al.,
Plaintiffs–Appellees,**

v.

**Elmer BASSETT and Esther Bassett,
Defendants–Appellants.**

**No. 18679.**

Supreme Court of New Mexico.

July 10, 1990.

Rehearing Denied Aug. 10, 1990.

Vernon Salvador, Albuquerque, for defendants-appellants.

Melinda J. Silver, Santa Fe, for plaintiffs-appellees.

## OPINION

SOSA, Chief Justice.

## I. STATEMENT OF THE CASE

Plaintiffs-appellees, Carl Bassett and his four sons, filed suit against defendants-appellants, Elmer Bassett, and Elmer's wife, Esther Bassett. Carl and Elmer are brothers. We do not discuss the other litigants who were involved nominally in the suit. Consequently, appellee herein is designated "Carl," and appellant "Elmer." In his amended complaint, Carl alleged that he and Elmer formed a partnership about the year 1950 for the purposes of conducting a ranching and farming business in the Edgewood district of Santa Fe County. Carl alleged that in 1950 the partnership purchased a section of land from L.W. Briggs and that in 1958 the partnership purchased another section of land from L.W. Briggs.

Carl alleged that although title to both parcels of land was placed in Elmer, it was agreed between the partners that Elmer held a one-half interest in the land in trust for Carl until such time as Elmer and Carl could find Carl similar land of like value. In May 1980 however, Elmer repudiated any such trust agreement, dissolved the partnership, and locked Carl out of both parcels of land. Carl alleged that Elmer held the land in trust for Carl on several theories, including resulting trust, unjust enrichment, constructive trust, and statutory trust pursuant to NMSA 1978, Section 46-2-13 (Repl.Pamp.1989). Carl also alleged breach of contract and sought the value of his labor and expenditures on the partnership business from 1950 to 1980.

The jury was asked to return a special verdict based on twenty interrogatories. Among the answers to the interrogatories, the jury found that: (1) "by spoken words, by actions and conduct or by a combination thereof," Carl and Elmer intended to enter into an agreement "whereby Carl Bassett would help Elmer Bassett with the purchase of the Briggs property in return for like help from Elmer Bassett[;]" (2) Carl performed on the agreement and was entitled to specific performance of Elmer's obligation to convey to Carl a one-half interest in the Briggs properties; (3) the Briggs properties were bought with partnership funds for partnership purposes; (4) Carl justifiably relied on Elmer's representations that Carl would have a one-half interest in the properties; (5) Elmer openly denied Carl's trust interest in the properties; (6) Elmer did not deal openly and honestly with Carl regarding Elmer's intentions as to the properties; (7) in reliance on Elmer's representations that Carl held a one-half interest in the property Carl gave up his interest in other property he owned in order to help pay for the Briggs properties;

(8) Carl and his sons should be compensated in the amount of $1.00 each for their contributions of labor to the partnership business conducted on the Briggs properties; (9) Elmer's actions in depriving Carl of his one-half interest in the properties were malicious, intentional, fraudulent, oppressive or reckless; and (10) Elmer was liable for punitive damages to Carl in the amount of $176,000.

In its findings of fact, the court found that: (1) a partnership had been formed and it had purchased the Briggs properties in such a way that Elmer held title to the properties but Carl had a one-half interest in the properties; (2) over the years Carl helped Elmer pay for the land, including mortgaging his own land to raise money to meet installment payments; (3) partnership income was used to pay for the land; (4) after making $8,000 in payments on other land he owned, Carl relinquished this property in order to meet the payment schedule on the Briggs properties; (5) after 1961, Carl and his sons did most of the ranch work while Elmer held outside jobs; (6) Carl and Elmer bought the Briggs properties with partnership funds and used the properties for partnership purposes; (7) Elmer wrongfully terminated the partnership agreement in 1980; (8) Elmer made false representations to Carl by telling Carl he owned a one-half interest in the Briggs properties and Carl relied to his detriment on these representations; (9) the Briggs properties were purchased in such a way that Elmer held a one-half interest in trust for Carl; and (10) Elmer openly denied Carl's trust interest.

In its conclusions of law, the court ruled that: (1) the Briggs properties were acquired with partnership funds; (2) Carl and Elmer performed on the partnership agreement until 1980; (3) Carl's interest in the partnership assets, including the Briggs properties, is personal property; (4) a resulting trust was established when Carl furnished money for the purchase of the property with the intention that Elmer would take title and hold Carl's one-half interest in trust; (5) Elmer repudiated the trust; (6) Carl has equitable title to a one-half interest in the properties; (7) Carl had no reason to know of the need to assert his right against Elmer until 1980; (8) the evidence was sufficiently clear, convincing and substantial to support the formation of either a resulting trust or a constructive trust in favor of Carl; (9) Elmer is subject to an equitable duty to convey a one-half interest in the properties to Carl; and (10) Elmer breached a confidential, fiduciary relationship with Carl and committed constructive fraud against him.

In its judgment, the court awarded Carl a one-half interest in the properties, attorneys fees of $30,074, reformation of the original deeds from L.W. Briggs to Elmer to show that Carl is tenant-in-common of the properties, compensatory damages, costs and punitive damages in the amount of $176,000. On appeal, we affirm.

## II.  ISSUES RAISED ON APPEAL

### A.  STATUTE OF FRAUDS

Elmer alleges that any agreement pertaining to the conveyance of the Briggs properties to Carl is rendered void by the Statute of Frauds. We disagree. While New Mexico has no statute incorporating the common law Statute of Frauds for the creation of a trust, New Mexico has adopted the English Statute of Frauds by judicial rule. *Childers v. Talbott*, 4 N.M. 336, 339, 16 P. 275, 276 (1888); *see also Browning v. Estate of Browning*, 3 N.M. 659, 9 P. 677 (1886). The question then becomes, are there any exceptions to the Statute of Frauds that would permit proof of an oral trust? It is well settled that "statutes requiring a writing for the creation or enforcement of a trust are not applicable to resulting or to constructive trusts." 5 Scott & Fratcher, *The Law of Trusts* § 406 (4th ed. 1989), *accord,* Bogert, *The Law of Trusts and Trustees* § 497 (2d ed. 1978).

### B.  STANDARD OF PROOF

Elmer further argues that the jury was not instructed properly that it must find the existence of a trust by clear, cogent and unambiguous evidence. Rather, it is alleged, the jury was given the

interrogatories with the understanding that proof must be shown merely by a preponderance of the evidence. It is true that evidence required to establish an oral trust must be "strong, cogent and convincing[.]" *Portales Nat'l Bank v. Beeman*, 52 N.M. 243, 250, 196 P.2d 876, 880 (1948); Bogert, *id.* ("[T]he case for the constructive trust [must] be 'clear and unequivocal.'") Here, the trial court explicitly concluded: "The evidence was sufficiently clear, convincing and substantial to support the formation of either a resulting trust or a constructive trust...." We take the court's finding as establishing the proof of an oral trust by "strong, cogent and convincing," or "clear and unequivocal" evidence. Even where the standard of proof is clear and convincing evidence, it is for the factfinder and not the appellate courts to weigh conflicting evidence and arrive at the truth. *Ledbetter v. Webb*, 103 N.M. 597, 601, 711 P.2d 874, 878 (1985). Likewise, we are bound on appeal to indulge every presumption to sustain the judgment. *Id.*

■ Further, at trial, Elmer neither asked the court to instruct the jury to find an oral trust by a higher standard of evidence nor submitted a proposed instruction in which the higher standard of evidence was enunciated. Hence, he is barred from demanding that we in effect retroactively require proof by the standard he requests. *See Salinas v. John Deere Co.*, 103 N.M. 336, 339, 707 P.2d 27, 30 (Ct.App.) ("A mere assertion that an instruction does not state the law is insufficient."), *cert. quashed*, 103 N.M. 287, 705 P.2d 1138 (1985); *McNeely v. Henry*, 100 N.M. 794, 799, 676 P.2d 1359, 1364 (Ct.App.1984) (To preserve error on appeal "[i]t is necessary to submit a correct instruction or form of verdict for the court's consideration below.").

## C. PAROL EVIDENCE RULE

■ Elmer asserts that Carl's testimony, objected to at trial, concerning the reason why L.W. Briggs placed title to one of the Briggs properties in Elmer, and Carl's testimony concerning the agreement underlying transfer of the deed on another of the Briggs properties, violates the parol evidence rule. We disagree. Carl was not a party to the deeds and thus could testify as to the facts surrounding their transfer. *Roehl v. Anderson*, 31 N.M. 616, 619, 249 P. 1010, 1011 (1926) (strangers to writing not bound by parol evidence rule). Further, there is no bar to the introduction of parol testimony in order to prove the trust asserted here. *Browne v. Sieg*, 55 N.M. 447, 234 P.2d 1045 (1951) ("[a] resulting trust may be established by parol evidence, even in direct contradiction of a warrant, patent or deed") (citation omitted).

## D. STATUTE OF LIMITATIONS AND LACHES

■ Elmer claims that because Carl had constructive notice of the deeds on the dates they were recorded (1950 and 1957, respectively) Carl was required to file suit by 1963. In the alternative, Elmer contends, Carl unreasonably delayed in filing suit and thus his complaint is barred by the doctrine of laches. We disagree. Carl has alleged, and the court has found, constructive fraud. A statute prescribing a limitation period for fraud applies to constructive fraud. *Gaston v. Hartzell*, 89 N.M. 217, 219, 549 P.2d 632, 674 (Ct.App.1976). We apply the same reasoning here as the court of appeals did in *Gaston:* "[A] person does not slumber on his legal rights when he is wholly unaware of the nature of his legal rights or the cause which gave rise to them." *Id.* at 220, 549 P.2d at 635.

■ The statute of limitations under consideration here, NMSA 1978, Section 37–1–3(A) (six years), is limited by NMSA 1987, Section 37–1–7, which provides that "[i]n actions for relief, on the ground of fraud * * * the cause of action shall not be deemed to have accrued until the fraud * * * complained of, shall have been discovered by the party aggrieved." Carl could not possibly have discovered that Elmer defrauded him until Elmer forced Carl off his property and repudiated the trust in 1980. Carl filed suit in 1981, well within the time of the limitation period. He also filed in a reasonable period of time to avoid the doctrine of laches.

### E. PUNITIVE DAMAGES AND ATTORNEY FEES

Contrary to Elmer's contention on appeal, we find the record supports the award of punitive damages. Our ruling in *Levy v. Disharoon*, 106 N.M. 699, 749 P.2d 84 (1988), is relevant here. There we said: "It follows from the general requirement of good faith in partnership dealings that a partner is not allowed to gain any advantage over a co-partner by fraud, misrepresentation or concealment, and for any advantage so obtained he must account to the co-partner." *Id.* at 704, 749 P.2d at 89. In upholding an award of $100,000 punitive damages in *Levy*, we held that punitive damages were not so unrelated to actual damages of $103,000 as to be clearly erroneous. Here the present value of the land in controversy is well over a million dollars. Punitive damages were set by the jury at $176,000, based on the jury's finding that Elmer's conduct had been malicious, intentional, fraudulent, oppressive or reckless and in wanton disregard of Carl's rights. The court expressly found that Elmer had committed constructive fraud against Carl, and that he had failed to be open, fair and honest in dealing with Carl as a partner. The award of punitive damages was proper.

As for attorney fees, Elmer is right to state the general rule that each party to litigation must pay his own attorney fees, *State ex rel. Stanley v. Lujan*, 43 N.M. 348, 349, 93 P.2d 1002, 1003 (1939), unless the case falls within the exceptions noted in *Gregg v. Gardner*, 73 N.M. 347, 360–61, 388 P.2d 68, 77–78 (1963). *See also Gurule v. Ault*, 103 N.M. 17, 19, 702 P.2d 7, 9 (Ct.App.1985). Yet, another judicial exception to the general rule has been announced by the Supreme Court of Washington in *Hsu Ying Li v. Tang*, 87 Wash.2d 796, 557 P.2d 342 (1976) (en banc). In that case one partner's negligent breach of his fiduciary duty to another partner amounted to constructive fraud. The court based an award of attorney fees on the court's "inherent equitable powers." *Id.* at 799, 557 P.2d at 345. We note that the South Carolina Court of Appeals has declined to follow the "bad faith exception" set forth in *Hsu Ying Li.* *See Weeks v. McMillan*, 291 S.C. 287, 353 S.E.2d 289 (Ct.App.1987).

In *Hsu Ying Li*, the court pointed to Washington statutes detailing the fiduciary duties which partners owe to one another. In particular, the court quoted from RCW 25.04.210(1), 87 Wash.2d at 800 n. 2, 557 P.2d at 345 n. 2, a statute that is identical to NMSA 1978, Section 54–1–21(A) (Repl. Pamp.1988), which reads, in pertinent part:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

NMSA 1978, Section 54–1–39 (Repl.Pamp. 1988) provides in pertinent part:

> Where a partnership contract is rescinded on the ground of the fraud or misrepresentation of one of the parties thereto, the party entitled to rescind is, without prejudice to any other right, entitled:
>
> \*    \*    \*    \*    \*    \*
>
> C. to be indemnified by the person guilty of the fraud or making the representation against all debts and liabilities of the partnership.

Neither of these statutes contemplates granting attorney fees to an aggrieved party who is situated similarly to Carl in the case before us. Yet, like the court in *Hsu Ying Li*, we read our statutes as requiring strict compliance between partners in their duty to deal with one another as fiduciaries fully, honestly and openly. Where one partner breaches the fiduciary duty owed another partner, on dissolution of the partnership and accounting of assets it is within the equitable jurisdiction of the court to consider an award of attorney fees to the aggrieved partner. We thus follow the exception to the general rule on award of attorney fees as stated in *Hsu Ying Li.*

### F. SUBSTANTIAL EVIDENCE

Elmer maintains that there was no substantial evidence before the jury to sup-

port Carl's claim that the Briggs properties were an asset of the partnership or that a one-half interest in the properties was held in trust for Carl. We disagree. The record shows that Carl made substantial monetary contributions to the partnership and that partnership money was used to retire the debt on the Briggs properties. Further, Carl used his own resources to support the partnership business and borrowed money to make installment payments on the Briggs properties so that the partnership business could be maintained.

Carl introduced into evidence a letter to him from the National Farm Loan Association of Albuquerque in which the secretary-treasurer of the association wrote, "It is understood that this money [loaned to Carl] is to be used * * * to take care of the installments now due on the indebtedness on Elmer Bassett's farm." In the context of the case, "Elmer Bassett's farm" means partnership property. Although Carl made only two payments directly to L.W. Briggs, he made several other payments to Briggs through Elmer's bank account. The fact that Elmer made the bulk of the payments does not mean that Carl did not contribute substantial income to purchase the properties. The evidence showed that partnership income usually was placed in Elmer's personal banking account, from which Elmer then wrote checks to satisfy indebtedness on the Briggs properties.

Exhibits given to the jury show that Carl made $13,747 in payments and Elmer $10,403, with the brothers' father making the remainder of the payments. Based on evidence detailing Carl's and Elmer's income from and expenses for partnership business through 1962, when Carl and his sons began to do most of the work on the properties, it appears that Carl expended $96,807 on the partnership business and Elmer $68,264. Carl's partnership income through 1962 was $73,784, and Elmer's $53,369. There is little doubt from the record that Carl and Elmer equally were engaged in maintaining the business and that they likewise were engaged equally in retiring the indebtedness on the Briggs properties. "Unless the contrary intention appears, property acquired with partnership funds is partnership property." NMSA 1978, § 54-1-8(B) (Repl.Pamp.1988). Here the jury was entitled to conclude that the Briggs properties were an asset of the partnership.

The same reasoning applies to Elmer's contention that there is a lack of substantial evidence to support the oral trust. The court specifically found:

> Carl and Elmer Bassett agreed that legal title to the property would be taken in the [name] of [Elmer] and further agreed that [Carl] would have a fifty percent (50%) interest in the property until such time as [Elmer] was able to assist [Carl] in acquiring property of an equal value in his name.

This finding was based in part upon the jury's affirmative answer to interrogatory number 9, which asked, "Did Carl Bassett justifiably rely upon representations made by Elmer Bassett in 1950 that Carl Bassett would have a one-half interest in the Briggs property, or would be helped by Elmer Bassett in obtaining a like property?" From our review of the record and taped transcript we find that the jury was justified from the evidence in making the conclusion it did, and that the court likewise was justified in finding as it did.

Our conclusion here is similar to that in *Citizens Bank of Clovis v. Williams*, 96 N.M. 373, 630 P.2d 1228 (1981), where we held:

> The trial judge hears the witnesses in person and has the opportunity to observe their demeanor and manner of testifying and has a much better grasp of the evidence in its entirety than we have. Based upon a cold record on appeal and absent an erroneous application of the law, we will not interfere with the trial court's decision. Under the circumstances and facts in this case, we believe the trial court arrived at a correct result.

*Id.* at 376, 630 P.2d at 1231 (substantial evidence supported finding by trial court that partners had entered into an oral agreement specifying an equal division of assets of ranching business).

## G. NATURE OF TRUST INTEREST INVOLVED

The trial court concluded that "[t]he evidence was sufficiently clear, convincing and substantial to support the formation of either a resulting trust or a constructive trust in favor of" Carl. We agree with the trial court that Carl properly alleged and proved either or both types of trust. The difference between a resulting trust and a constructive trust has been stated as follows:

> [A] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest * * *. It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the *constructive* or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them.

*Martin v. Kehl*, 145 Cal.App.3d 228, 237, 193 Cal.Rptr. 312, 318 (1983) (emphasis in original, citations omitted).

As discussed above, the evidence shows that Elmer perpetrated a constructive fraud on Carl by inducing him to contribute his money and labor to the support of the partnership business in reliance on Elmer's promise to hold for Carl a one-half interest in the Briggs properties until such time as the brothers could find Carl like property of similar value. This presents a classic case of constructive trust. "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." 5 Scott & Fratcher, *The Law of Trusts* § 462 (4th ed. 1989). Here, Elmer held a one-half interest in the Briggs property in trust for Carl and was subject to an equitable duty to convey that one-half interest to Carl, as the court has ordered. A constructive trust properly has been found.

With respect to the resulting trust, there are three situations in which such a trust arises:

(1) where an express trust fails in whole or in part;

(2) where an express trust is fully performed without exhausting the trust estate;

(3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person.

*Id.* § 404.1.

Here, the third situation is the relevant one, on either of two theories. By one theory, Carl purchased a one-half interest in the Briggs properties with his own money and directed L.W. Briggs to place title to the entire property in Elmer's name, with Elmer the trustee of a resulting trust holding the beneficial interest of Carl's one-half interest for Carl. By the second theory, the partnership purchased the property, placing title to the property in Elmer. Elmer thus was under an obligation to hold Carl's one-half interest in the property for Carl in trust until the partnership dissolved and an accounting was had.

Although the court did not find what might be termed a "statutory trust" under NMSA 1978, Section 46–2–13 (Repl.Pamp. 1989), Carl had alleged a trust under that section. The section provides, in pertinent part:

A. When an interest in real property is conveyed by deed to a person on a trust which is unenforceable on account of the statute of frauds and the intended trustee or his successor in interest still holds title but refuses to carry out the trust on account of the statute of frauds, the intended trustee ... shall be under a duty to convey the interest in real property to the settlor * * *.

As has been noted before,

The fact pattern to which § 46–2–13 is addressed is * * * not a fact pattern in which the resulting trust has historically been used. An oral agreement not complied with is simply not a fact pattern which lends itself to allow the clear implication of a settlor's intention not to convey the beneficial interest * * *. The would-be settlor under this fact pattern

is attempting exactly what the Statute of Frauds forbids, conveyance of legal title to land upon an oral trust, whether in his favor or to the benefit of another.

\* \* \* \* \* \*

If § 46–2–13 creates a resulting trust, it is not the classic resulting trust, but merely a situation which has the same legal effect, a resulting back to the transferor. If § 46–2–13 creates a constructive trust, it is a restitutionary device which must be used to convey land in a prescribed direction, to the settlor.

Note, *Real Property—Constructive Trust—Resulting Trust: Thomas v. Reid,* 12 N.M.L.Rev. 591, 601–02 (1982).

Perhaps because of the ambiguity surrounding the purpose and use of Section 46–2–13, the trial court did not structure a remedy based on this section. Accordingly, we need not discuss whether under the statute there is an alternative remedy distinct from the traditional equitable remedies of a constructive trust and a resulting trust.

## H. AWARD TO CARL OF A ONE–HALF INTEREST IN THE BRIGGS PROPERTIES

■ Elmer argues that even if a trust has been proven, no evidence has been introduced which shows that Carl owned a beneficial one-half interest in the Briggs properties. Elmer is right to assert the general rule that "where one person pays part of the purchase price and title is taken in another's name, the payor cannot secure a greater interest in the property by way of a resulting trust than the proportion of the amount he paid bears to the total *purchase price." Martin v. Kehl,* 145 Cal. App.3d at 243, 193 Cal.Rptr. at 321. This rule distinguishes between consideration paid at time of conveyance and subsequent monetary contributions to make improvements or for installments paid after title has been acquired. *Id.*

■ While there is no direct evidence showing that Carl and Elmer paid equal portions of the down payment, there is abundant circumstantial evidence showing that from the inception of the partnership the brothers looked upon themselves as equal partners. Testimony by Carl's expert witness, an accountant who had kept the books of the partnership for many years, showed that the brothers attempted to share profits and losses equally. Testimony by Carl's wife supported Carl's position that the brothers invested equally in the land from the beginning. Over the years, Carl invested slightly *more* than fifty percent of his money in the land, a fact that circumstantially supports an original fifty-fifty contribution of the purchase price. Even if Elmer paid more to L.W. Briggs as a down payment than did Carl, it is clear that in 1950 the brothers intended to contribute equally to every partnership business investment. It could be inferred, to create a hypothetical, that if Elmer paid $100 on the down payment and Carl only $50, that the brothers nonetheless considered each to be paying $75, with the appropriate reimbursement of $25 from Carl to Elmer to take place as time and further accounting took place. We find no error in the court's award of a one-half interest in the land to Carl.

Elmer raises several other minor points on appeal, which we find to be without merit.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

MONTGOMERY and WILSON, JJ., concur.