812 P.2d 1300

Maria Susan Vera ARAGON, et al.,
Petitioners–Appellants,

v.

RIO COSTILLA COOPERATIVE LIVE-STOCK ASSOCIATION, Bert Quintana, Alonso H. Martinez, Bill Vigil, Fidel Martinez and Gustavo Vallejos, Jr., Respondents–Appellees.

No. 19026.

Supreme Court of New Mexico.

June 6, 1991.

Tapia & Campos, Lorenzo E. Tapia, Albuquerque, Charles Solomon, Santa Fe, Arturo G. Ortega, Albuquerque, for petitioners-appellants.

Harl D. Byrd, Santa Fe, for respondents-appellees.

## OPINION

RANSOM, Justice.

This suit involves a claim that certain land which is the major asset of a cooperative livestock association is subject to an express, resulting, or constructive trust for the benefit of plaintiffs. After the first phase of a trifurcated trial, the court found that no trust was intended for the benefit of plaintiffs, nor was there such evidence of fraud, wrongful or unconscionable conduct, or breach of any duty owed to plaintiffs that would justify the imposition of a trust. The court entered final judgment against plaintiffs.

On appeal, plaintiffs assert that the trial court erred by failing to declare either an express or a resulting trust.[1] They also claim that the trial court erred in deciding issues reserved for the later phases of the trial, and they request this Court to remand the case with instructions to consider

---

1. In their requested findings of fact, plaintiffs also sought to have the court impose a constructive trust on the basis of unjust enrichment and the unconscionable conduct of the Association. This request was refused as was plaintiffs' requested conclusion of law that a constructive trust should be imposed. In this appeal, while plaintiffs designate one of their requested findings of fact on the issue of a constructive trust as part of the findings the trial court erroneously refused, plaintiffs fail in any way to address in their briefs, either by argument or the citation to authority, the question of why a constructive trust should have been imposed by the trial court. We do not consider whether the trial court erred in failing to declare a constructive trust. *See* SCRA 1986, 12–213(A)(3); *In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984) (issues not briefed will not be reviewed).

those issues. The order trifurcating the trial provided that Phase I was to "determine the issue of whether or not a trust was created." Phase II was to determine "whether or not the plaintiffs are some of the beneficiaries of said trust." Phase III was reserved for the trial of "all other issues, legal and factual, as to whether defendants have breached their fiduciary duties, mismanaged and misappropriated the assets of the defendant cooperative and the nature of the relief and/or damages to which the plaintiffs may be entitled." We find substantial evidence in the record to affirm the decision of the district court in its refusal to declare either an express or resulting trust. However, we remand the cause for the district court to consider potential Phase III issues.

*Facts.* During the Great Depression years of the late 1930's, families who had settled along the Costilla and Ute Creek river valleys within a portion of the old Sangre de Cristo Land Grant in northern New Mexico organized to acquire the land where they lived and that they used for subsistence agricultural purposes. These persons principally lived in the villages of Costilla and Amalia. The land they sought to acquire, totalling roughly 125,000 acres, then belonged to General Thomas Campbell of the Costilla Land Development Company. Only a very few of the residents of this area had legal title to any of the land they occupied or used. Since about 1905 when the land company had acquired title to this portion of the original grant, the local residents had been engaged in numerous lawsuits with the company over water, timber, and grazing rights, and over title to individual land holdings.

The declining economic conditions among the residents, due in part to the lack of a land base, attracted the attention of the federal government. The Farm Security Administration (FSA) of the Department of Agriculture made a study of conditions in the area and proposed that the federal government assist the residents by reestablishing a balanced farming and stockraising economy, an economy that increasingly had been disrupted by the large-scale commercial operations of the land company. For the purpose of acquiring the land owned by Campbell, the FSA proposed to make a loan to an association to be composed of approximately 175 families. Accordingly, the Rio Costilla Cooperative Livestock Association was formed, and with the assistance of the FSA the Association was able to acquire the land in 1942. The Association bought title to the land from Campbell and executed a mortgage to the FSA in return for a purchase-price loan of $136,500. In 1953 the Association sold a portion of the land and paid off the mortgage.

Plaintiffs, certain individuals who lived in this area in 1942, or who are descendants of those who did, brought this suit in 1979 seeking a declaration that the Association held title to the acquired land in trust for their benefit or in the alternative to have the land declared theirs as tenants in common. Plaintiffs argue that, as a matter of law, a trust was created or resulted for the benefit of all of the people of Costilla and Amalia, including their heirs and descendants, who were residents in 1942.

*General trust principles.* Since plaintiffs relied upon multiple theories of trust, we briefly review trust principles:

—*Express trusts.* The *Restatement (Second) of Trusts* defines an express trust as a fiduciary relationship with respect to property, subjecting the person holding title to the property to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it. *Restatement (Second) of Trusts* § 2 (1957) [hereinafter *Restatement*]. For our purposes, the significance of the general definition lies in the requirement of a manifestation of an intention to create the trust. In this regard, either written or spoken words, or conduct, will suffice, and no particular form of words or conduct is necessary. *Id.* at § 24; *accord Ward v. Buchanan*, 22 N.M. 267, 270, 160 P. 356, 357 (1916). "Express trusts are those which

are created by the direct and positive acts of the parties, by some writing, or deed, or will, or by words, either expressly or impliedly evincing a desire to create a trust." *Id.*

■ Significantly, the declaration and creation of a trust in land falls under the English statute of frauds, *see* An Act for Prevention of Frauds and Perjuries, 1677, 29 Car. 2, ch. 3, § 7 (Am.Jur.2d Desk Book, Doc. No. 116 (1962)), which is part of our common law. *Alvarez v. Alvarez,* 72 N.M. 336, 341, 383 P.2d 581, 584 (1963). Thus, while an express trust in real estate need not be *created* in writing, some memorandum manifesting and proving the trust must exist. *See, e.g., Eagle Mining & Imp. Co. v. Hamilton,* 14 N.M. 271, 91 P. 718 (1907) (express trust proved by recognition of trust in correspondence between parties). The failure of an oral trust in land by virtue of the effect of the statute of frauds may result in the imposition of a constructive trust under certain circumstances, *see Restatement* §§ 44, 45, or may result in the duty to reconvey title to the settlor under NMSA 1978, Section 46–2–13 (Repl.Pamp.1989).

■ —*Resulting trusts.* A resulting trust differs from an express trust in the manner of its creation. It arises when a person makes a disposition of property under circumstances which raise an inference that such person does not intend that the party taking or holding the property should also have the beneficial interest therein, and where the inference is not rebutted and the beneficial interest is not otherwise disposed of. *Restatement* § 404; *accord Bassett v. Bassett,* 110 N.M. 559, 566, 798 P.2d 160, 167 (1990). Since the person who holds title to the property is not entitled to the beneficial interest, the property "springs back or results," to the person who made the original disposition or to that person's estate. *Watson Truck & Supply Co. v. Males,* 111 N.M. 57, 59, 801 P.2d 639, 641 (1990). In the case of a resulting trust it is not necessary to show that the settlor

manifested any intention to create a trust. It is necessary to show the absence of any intention to give the beneficial interest to the transferee. In that case the settlor presumably intends to retain the beneficial interest, or it may be inferred that the settlor would have formed such an intention had the settlor foreseen certain future events. *See Restatement* Ch. 12, Topic 4, Introductory Note at 392.

■ A resulting trust arises in three general types of circumstances. The first two situations involve the failure of an express trust or when the performance of a trust does not exhaust the trust estate. *See Bassett,* 110 N.M. at 566, 798 P.2d at 167. The third situation, the one plaintiffs argue is relevant to this case, is where property is purchased and the purchase price is paid by one who directs that the vendor convey the property to another person. *Id.; see also Restatement* § 440. In this third situation the inference that arises from the circumstances of the disposition is that the one who paid the purchase price presumably intended to retain the beneficial interest. *Restatement* Ch. 12, Topic 4, Introductory Note at 392. Nevertheless, an inference that the transferee was not intended to have the beneficial interest may be rebutted by showing that the payor intended to make a loan of the purchase price to the transferee. *Restatement* § 445. In this situation the result is the same whether the lender pays the vendor directly or the transferee pays the purchase price after receiving the funds from the lender. *See id.* comment a.

—*Intention-enforcing trusts.* Express trusts and resulting trusts both are said to be intention-enforcing trusts. An express trust is created only if the settlor manifests an intention to create it; a resulting trust arises where circumstances raise an inference that the settlor does not intend that the person taking or holding title shall have the beneficial interest. *Restatement* § 1 comment e; 5 A. Scott & W. Fratcher, *The Law of Trusts* § 404.1 (4th ed. 1989).

■ —*Constructive trusts.* A constructive trust, on the other hand, except to the extent it may arise out of an express trust or the attempt to create one, is not imposed to effectuate the intention of the parties, but is imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it. *Id.* at §§ 404.2, 462.1. The circumstances where a court might impose such a trust are varied. They may involve fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct. *Id.* at §§ 404.2 and 462; *see, e.g., In re Estate of McKim,* 111 N.M. 517, 807 P.2d 215 (1990); *Garcia v. Marquez,* 101 N.M. 427, 684 P.2d 513 (1984). When the court imposes a constructive trust the person holding title to the property is subject to an equitable duty to convey the property to another person as a remedy.

*Dispositive findings and conclusions.* In the case before us, the dispositive findings of the trial court include the fact that the FSA, as a lender, proposed and required the establishment of a legal entity, incorporated under the laws of the State of New Mexico, to acquire the real property. This entity was to be a cooperative known as the Rio Costilla Cooperative Livestock Association. Documents submitted to the trial court show that the FSA intended that the Association would engage in agricultural operations that would not be of equal benefit to all of the people living in the area of Costilla and Amalia. Rather, the acquisition of the land by the Association mainly would benefit its members, or families of its members. The extent of the benefits to be derived would vary directly in relation to the participation of members in the Association's activities and in the programs and projects offered by the FSA. All of the prior negotiations concerning an FSA loan and the acquisition of the land by the Association merged in the deed by which it was intended the Association would acquire title free and clear of any express trust as contended by plaintiffs. *Cf. Superior Concrete Pumping, Inc. v.*

*David Montoya Constr., Inc.,* 108 N.M. 401, 773 P.2d 346 (1989).

■ *Substantial evidence.* The FSA surveyed the economic conditions of the residents of the two valleys and divided the families of the area into three groups. The first group, numbering 71 families, depended almost entirely on subsistence agriculture, including the raising of livestock, and had sufficient land resources to maintain a "fair standard of living" if that group's farming practices were to be improved. The second group, numbering 105 families, engaged to some degree in agricultural pursuits but depended on wage work of various kinds for any cash income. Many of the families in these two groups claimed ownership of agricultural land, although in most cases their title to this land was doubtful. The total land cultivated by these families was about 3,293 acres. These families also claimed to own or rent another 5,764 acres of pasture. The survey made by the FSA stated that the remaining group of residents, about 150 families, depended entirely upon relief and wage work for a livelihood. These families were not engaged in agricultural activities to any significant degree and they neither owned nor rented any farmland.

The loan proposal of the FSA stated that the Cooperative Association was to consist of approximately 175 members, that is, one member of each family in the first two groups—those families that were engaged in agricultural pursuits. The proposal of the FSA stated that acquisition of the grant land by the Association would *not* materially help the families in the third group. While the proposal noted that these persons favored the acquisition, it suggested that these persons could expect to receive only minimal direct or indirect benefits. The proposal indicated that the members of the nonagricultural group could expect to obtain increased employment outside the community since members in the second group would be engaged in work at home once the land was acquired. The proposal also indicated that

members of the third group would be able to obtain wood-cutting permits from the Association at a nominal charge. The proposal acknowledged that this group always had used the land of the Sangre de Cristo Grant for collecting fuelwood and building material and that the acquisition of the land by the Association would provide them with continued access. These documents provide substantial evidence from which the trial court could conclude that neither the negotiations leading up to the loan by the FSA nor the manner in which the Association acquired title to the grant lands demonstrated any intent to create a trust in favor of the residents of the Sangre de Cristo Grant generally.

■ Likewise, we find substantial evidence to support the conclusion of the trial court that no resulting trust arose from these circumstances. Nothing was introduced to suggest that the Association was not intended to have the beneficial interest in the property after the transfer of title to that organization. To the contrary, the evidence shows the land was purchased specifically to benefit the members of the Association, to arrest their economic decline, and with the expectation that the acquisition of the property would reestablish a balanced farming and stockraising economy in the area. This intention is evinced both by the loan proposal prepared by the FSA and by the Articles of Incorporation of the Association itself. The latter provided that:

> The purpose for which the association is organized is to assist in rehabilitating the families of its members (rural families of low income) by purchasing, leasing, operation, development, improvement and maintenance of lands and water resources, farms, homes and other facilities, including the necessary or appropriate community and cooperative facilities, services and enterprises for the families of its members, and to do and perform all acts and things necessary, convenient, useful or incidental to the accomplishment of this purpose.

Moreover, any inference from the circumstances of the transaction that the Association was not intended to have the beneficial interest in the acquired land is rebutted by the showing that the advance of the purchase price for the acquisition of the property was arranged in the form of a loan, a standard loan secured by a mortgage. In any event, if a resulting trust were to be imposed by the court because the transferee was not intended to have the beneficial interest, the trust would be imposed for the benefit of the party who paid the purchase price, and neither plaintiffs nor their predecessors can be characterized as the individual payors.

■ *Dismissal of claims reserved for second and third phases of trial.* Having concluded that no trust was intended to have been created, or was to be imposed by the court based upon the evidence that had been offered, the trial court decided it was not obligated to continue the proceedings to rule upon the issues in connection with Phases II and III. Plaintiffs assert on appeal that termination of the proceedings was premature and that the trial court went beyond the agreed limits of the first phase of the trifurcated proceedings to decide certain reserved issues. Specifically, plaintiffs argue that the court's findings related to whether the Association breached any fiduciary duty owed to plaintiffs or related to the denial of membership, both said to be reserved issues. Examples of the findings plaintiffs find objectionable include:

10. Plaintiffs have adduced no evidence of fraud, actual or constructive, duress, abuse of a confidence, commission of a wrong, unconscionable conduct, breach of any legal or equitable duty owed to Plaintiffs by RCCLA, mistake or other evidence that would justify imposition of a constructive trust in this case.

18. It was intended by all parties participating in the aforesaid negotiation that admission to membership in RCCLA would be governed solely by the Articles of Incorporation and By–Laws proposed

by FSA and adopted by RCCLA and that no one would be entitled to membership therein without complying with the applicable terms and conditions of said Articles of Incorporation and By–Laws.

21. No evidence has been submitted that shows that it was intended by FSA that residency upon the Sangre de Cristo Grant, in and of itself, would create a trust entitling persons so residing thereon to membership in RCCLA or to use of its lands as a beneficiary of any purported trust.

23. There is no evidence that anyone meeting the qualifications of requirements of membership contained in the Articles of Incorporation and By–Laws of RCCLA, was wrongfully refused membership in RCCLA or that membership in RCCLA was wrongfully terminated.

These findings, and others not reproduced here, would seem to be related to factual issues that were before the court in the first phase of the proceedings, that is, facts that were or could have been adduced as having a direct bearing upon trust issues. For instance, the complaint and pretrial order both correlate the imposition of a constructive trust with an improper denial or termination of membership in the Association.[2] The findings of the trial court all suggest possible rationales for the imposition of a constructive trust, as recognized or suggested by our case law, and the findings state the court's decision that such evidence is lacking. Given the fact that one of the ultimate issues to have been decided in the first phase was whether to impose a constructive trust, these findings would appear to be properly within the scope of that phase.

However, after examining the pretrial order we cannot say whether the proceedings in Phase III were intended by the parties to be dependent upon the declaration by the trial court that some plaintiff class was the beneficiary of a trust of some kind.[3] Additionally, it is simply unclear to us whether the declaration of a trust was understood to be a prerequisite to the assertion in Phase III of any specific right to membership in the Association.[4] It does not necessarily follow that, because the

---

2. In the pretrial order plaintiffs divided themselves into seven groups and claimed each group was the beneficiary of either a resulting or a constructive trust for one of the following seven reasons: (1) their right to membership had been recognized in the past but they had been wrongfully deprived of membership; (2) they were heirs of persons who if not deceased would be members of the first group; (3) they were entitled to membership because they were heirs of persons who were the intended beneficiaries of the trust created by FSA; (4) they were entitled to membership because they were born within the boundaries of the acquired land and resided there in 1942; (5) they were entitled to membership simply because they were born within the boundaries of the acquired land; (6) they were entitled to membership because they were heirs of one or more parents who were entitled to membership; and (7) they were persons who were eligible for membership as they were persons who were to be benefited by the loan from the FSA, but they wrongfully had not been admitted to membership.

In their requested finding of fact number thirty-six, the plaintiff stated that "by its unconscionable conduct in denying rightful beneficiaries the benefits for which the land was conveyed, [the Association] has breached the duty imposed on it to operate the lands for the benefit of designated families and their descendants and a constructive trust should be imposed." By "designated families" we understand the requested finding of fact to refer to the seven groups of plaintiffs delineated in the pretrial order.

3. Clearly, the ruling in Phase I made moot Phase II proceedings. Phase II was to decide whether individual plaintiffs were beneficiaries of "said trust." We understand the contemplated nature of those proceedings to encompass individual claims of entitlement to membership in one of the seven groups of designated families in the pretrial order.

4. With regard to qualification for membership, the by-laws of the Association provided:

The members of this Association shall consist of the owners of membership certificates of the Association. One, but not more than one member, 18 years of age or over, of each family approved for residence on or use of the land or lands now or hereafter leased or owned by the Association, *who is engaged in agricultural pursuits,* and who is acceptable to the Board of Directors, shall be entitled to become a member of this Association upon the payment of a membership fee of $1.00.... [Emphasis added.]

improper denial of membership was a potential basis for the imposition of a constructive trust, a claim for improper denial of membership was limited to a constructive trust theory. We note that in Phase I no attempt was made to introduce evidence to establish any individual claim for improper denial of membership under a simple theory of violation of the articles of incorporation. We do not wish to preclude such a claim. For this reason, finding number twenty-three, that there is no evidence that anyone meeting the qualifications for membership under the articles of incorporation was wrongfully denied membership, should not be read to decide that issue if evidence supporting such a claim is forthcoming.

Accordingly, we affirm the judgment for defendants on Phase I and II issues and remand the cause to the trial court to consider whether there are genuine issues of material fact remaining under Phase III regarding membership, breach of fiduciary duty, mismanagement, and misappropriation of assets on grounds other than the trust theories relied upon in Phase I. We, of course, do not preclude summary judgment proceedings or other appropriate resolution of whether a Phase III trial is warranted.[5]

IT IS SO ORDERED.

MONTGOMERY and SMITH, JJ., concur.

---

Under the by-laws of the Association, every member was to receive an annual grazing permit for lands owned or controlled by the Association.

5. Additionally, this case does not purport to decide any issues regarding the rights of the litigants in and to the accounts of member patrons of the Association, or the successors in interest to member patrons, in the event of dissolution of the Association as provided in Article XII, Section 4, of the by-laws. That provision states that in the event of dissolution of the Association, after the payment of the Association's debts, the sums credited to a patron's account for retained refunds shall be paid to each patron in the proportion which they bear to the total amount of all sums credited to all patrons for retained refunds; provided, that after all retained refunds have been paid to the patrons, any remaining assets shall be used (1) to repay amounts paid in for membership certificates, and (2) for distribution to the members in the proportion provided in that Section (Article XII, Section 4).