This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LEON KARELITZ, Individually and as Trustee of the Leon and Lee T. Karelitz Trust, ROBIN C. BLAIR, Personal Representative of the Estate of Leon Karelitz, Deceased, and ROBIN C. BLAIR, Successor Trustee of the Leon and Lee T. Karelitz Trust,**

Plaintiffs-Appellants,

v.                                                                          NO. 31,235

**THE REGENTS OF THE UNIVERSITY OF NEW MEXICO, a Body Corporate, SUELLYN SCARNECCHIA, in her individual capacity and in her official capacity as Dean of the Law School of the University of New Mexico, THE UNIVERSITY OF NEW MEXICO FOUNDATION, INC., and PATRICIA A. MADRID, in her official capacity as Attorney General of the State of New Mexico,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Sheri A. Raphaelson, District Judge**

Robin C. Blair
Raton, NM

Kamm & McConnell, L.L.C.
Terrence R. Kamm
Raton, NM

for Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Antelo J. Artuso
Albuquerque, NM
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Robert M. St. John
Edward Ricco
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**VANZI, Judge.**

Plaintiff appeals from the district court's grant of summary judgment in favor of the Regents of the University of New Mexico (UNM), the University of New Mexico Foundation (UNM Foundation), and Suellyn Scarnecchia, individually and as former dean of the University of New Mexico School of Law (collectively, Defendants or UNM). We affirm.

**BACKGROUND**

In 2005, Plaintiff Leon Karelitz,[1] a retired New Mexico district court judge, initiated a civil action against Defendants and the Attorney General of the State of New Mexico for enforcement of a public charitable trust. Plaintiff's complaint stated

---

[1]Leon Karelitz, the original Plaintiff, passed away during the pendency of the district court proceedings. Robin C. Blair, as personal representative of Karelitz's estate, was thereafter substituted as Plaintiff. For ease of reference, throughout this Opinion, we refer to Karelitz as Plaintiff.

2

that he and his late wife, Lee Karelitz, had conveyed a portfolio of assets totaling approximately three million dollars to UNM for the purpose of endowing a teaching chair of evidence and procedure at the UNM School of Law. Plaintiff alleged that the conveyance, or "endowment gift" as he called it in the complaint, gave rise to a public charitable trust and imposed trust obligations on the part of Defendants. Plaintiff further alleged that Defendants had breached their trust obligations. As for requested relief, Plaintiff sought a declaration from the district court that Defendants' conduct was to be governed by the common law of trusts and the Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to -1105 (2003, as amended through 2011), that the court "instruct Defendants" regarding their trust duties in accordance with trust law, that the court retain jurisdiction to award cy pres relief if necessary, that Defendants restore certain allegedly misspent monies to Plaintiff's fund, and that the district court award costs and attorney fees.

In addition, Plaintiff's complaint listed twenty-seven written documents dating from 1987 through 2004 that he alleged established a trust relationship between Plaintiff and Defendants. The documents generally comprised wills executed by Plaintiff and his wife in 1987, a living trust agreement created in 1994 (separate trust agreement), a 1994 Agreement to establish the Lee and Leon Karelitz chair of evidence and procedure executed by Plaintiff and UNM (1994 Agreement), along with subsequent written amendments, and a number of letters or other correspondence

3

between Plaintiff and various individuals from UNM over the course of several years. The documents were included in the record below, and we will describe their contents as necessary in our discussion.

Defendants answered the complaint by denying that a public charitable trust had been created or that they were subject to trust obligations. Defendants thereafter moved for summary judgment, arguing that Plaintiff made a completed gift to Defendants for the benefit of UNM School of Law but had not established a public charitable trust as a matter of law. Defendants argued that there were no genuine issues of material fact and that the district court could decide as a matter of law whether a trust was created based on specific documentary evidence. Of the twenty-seven documents referenced in Plaintiff's complaint, Defendants maintained that the following five were dispositive on the issues raised in their summary judgment motion: (1) the 1994 Agreement; (2) an October 1996 letter from Plaintiff to UNM; (3) two amendments to the 1994 Agreement, the first in 2002 and the second in 2004 (the 2002 and 2004 Amendments, respectively); and (4) a 2003 working paper executed by the parties addressing investment policies (the 2003 Working Paper).

Plaintiff responded to Defendants' summary judgment motion by arguing that a genuine issue as to the existence of a charitable public trust was created if the district court considered all of the documentary evidence in the record, not just the five documents relied upon by Defendants. We note that Plaintiff submitted with his

4

response a lengthy affidavit along with twenty exhibits. Relying on the affidavit and exhibits as well as the documents filed with his complaint, Plaintiff argued in the response that the requisite elements for a charitable public trust were met.

At the summary judgment hearing, the district court concluded as an initial matter that there were no disputed issues of material fact and that the case turned solely on the resolution of legal issues—specifically, whether the documentary evidence established a trust or a gift. After indicating that it had reviewed all of the documentary evidence, the court determined that only four documents were controlling: the 1994 Agreement, the 2002 and 2004 Amendments, and the 2003 Working Paper. The district court ruled that these documents all established that Plaintiff made a gift, that his donations were "not money to be held in trust" by Defendants, and that no trust relationship was created. The court granted summary judgment in favor of Defendants. This appeal followed.

**DISCUSSION**

Plaintiff raises five arguments on appeal, which we have consolidated and will address as follows. First, we consider Plaintiff's argument that the district court erred in granting summary judgment solely based on the 1994 Agreement, the 2002 and 2004 Amendments, and the 2003 Working Paper, rather than all of the documentary evidence submitted by Plaintiff. Second, we address Plaintiff's contention that summary judgment was improperly granted because there are disputed issues of

5

material fact, or alternatively, because the court erred in concluding on the merits that a trust was not established. Plaintiff's remaining arguments fail on grounds of preservation, as we explain.

**1.    Standard of Review**

An appeal from the grant of a motion for summary judgment is reviewed de novo. *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 14, 150 N.M. 428, 260 P.3d 414. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (internal quotation marks and citation omitted). "We view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Amrep Sw.*, 2011-NMSC-037, ¶ 14 (internal quotation marks and citation omitted). The moving party "has the initial burden of establishing a prima facie case for summary judgment by presenting such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted). "Once the moving party has met this burden, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citations omitted).

**2.    New Mexico Law on Trusts and Gifts**

6

Before addressing Plaintiff's arguments on appeal, we briefly review the basic principles that govern the creation of trusts and gifts. New Mexico has adopted the Uniform Trust Code, Sections 46A-1-101 to -1105, which provides that a charitable trust is created if (1) the settlor has capacity to create a trust, (2) the settlor indicates an intention to create a trust, (3) the trustee has duties to perform, and (4) the same person is not the sole trustee and sole beneficiary. Section 46A-4-402(A); *see Aragon v. Rio Costilla Coop. Livestock Ass'n*, 112 N.M. 152, 154, 812 P.2d 1300, 1302 (1991) (relying on the Restatement (Second) of Trusts definition for an "express trust as a fiduciary relationship with respect to property, subjecting the person holding title to the property to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it"). A charitable trust, which is a type of express trust, is "created by the direct and positive acts of the parties, by some writing, or deed, or will, or by words, either expressly or impliedly evincing a desire to create a trust." *Ward v. Buchanan*, 22 N.M. 267, 270, 160 P. 356, 357 (1916); *see* § 46A-4-401 (providing that a trust may be created by a "transfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death"; "declaration by the owner of property that the owner holds identifiable property as trustee"; or an "exercise of a power of appointment in favor of a trustee").

The parties' arguments in this case primarily concern the element of the settlor's intention to create a trust. With regard to the settlor's manifestation of intention, our Supreme Court has indicated that "either written or spoken words, or conduct, will suffice, and no particular form of words or conduct is necessary." *Aragon*, 112 N.M. at 154, 812 P.2d at 1302; *see* Restatement (Third) of Trusts § 13 cmt. b, at 207 (2003). In addition, "[n]o particular manner of expression is necessary to manifest the trust intention. Thus, a trust may be created without the settlor's use of words such as 'trust' or 'trustee,' and the fact that a transferor uses the word 'trust' or 'trustee' does not necessarily indicate the intention to create a [trust] relationship." Restatement (Third) of Trusts § 13 cmt. b, at 207.

Turning to the requirements for a valid gift, the requisite elements were stated in *Lusk v. Daugherty*, 61 N.M. 196, 199, 297 P.2d 333, 335 (1956), and are: (1) property subject to gift; (2) a competent donor; (3) evidence of donative intent, not induced by force or fraud; (4) delivery to the donee; (5) acceptance by a competent donee; and (6) a present gift fully executed. *See* Restatement (Third) of Property: Wills & Other Donative Transfers § 6.1, at 4 (2003) (requirements of a gift are that the donor "transfer an ownership interest to the donee without consideration and with donative intent" and that the donee accepts the gift). As is the case with trusts, donative intent is a critical element in determining whether a transfer of property is a gift. *See* 38 Am. Jur. 2d Gifts § 15 (stating that "there must be a clear, unmistakable,

8

and unequivocal intention on the part of the donor to make a gift" and the donor must intend to "relinquish the right of dominion over the property"); *id.* § 16 (describing methods of proving donative intent); *see also* Restatement (Third) of Property: Wills & Other Donative Transfers § 6.2 cmt. a, at 19-20 (explaining how donative intent to make a gift is established).

**3.      Whether the District Court Erred in Excluding Extrinsic Evidence**

During the summary judgment proceedings, the district court was presented with a voluminous amount of documentation, much of it placed in the record by Plaintiff. It was of course to be expected then that the summary judgment hearing would involve questions as to which documents constituted the agreement between the parties and whether and to what extent extrinsic evidence was admissible to show whether or not a public charitable trust arose. As stated earlier, Defendants argued, and the district court agreed, that the 1994 Agreement, the 2002 and 2004 Amendments to the 1994 Agreement, and the 2003 Working Paper formed the agreement between the parties and were controlling. On appeal, Plaintiff does not appear to challenge the district court's use of the above four documents in deciding the merits of whether a trust was created; rather, Plaintiff's argument is that the court should have considered extrinsic evidence in the form of all of the remaining documents as well because this evidence established Plaintiff's intent to give the

9

assets to UNM "in trust." To frame our discussion, we first describe the contents of the documents before the district court.

**a.      What the District Court Considered to Be the Controlling Documents The 1994 Agreement**

The 1994 Agreement was titled "Agreement to Establish Lee and Leon Karelitz Chair of Evidence and Procedure" and referred throughout to Plaintiff and his wife as "Donors." The 1994 Agreement concerned the disposition of two sources of Plaintiff's assets: (1) a trust estate remaining upon the death of Plaintiff and his wife under the terms of the separate trust agreement that was executed on the same date as the 1994 Agreement; and (2) a series of annual lifetime contributions that Plaintiff had previously made and may continue to make to UNM. With respect to the trust estate, the 1994 Agreement, in a section titled "Gift to [UNM] Foundation[,]" designated the UNM Foundation as the "sole beneficiary" of the trust estate and recited that the "entire trust estate . . . remaining at the death of the last to die of the Donors [was] to be distributed to the UNM Foundation." The 1994 Agreement further stated that, under the terms of the separate trust agreement, Plaintiff and his wife, while both were alive, and after the death of the first Donor to die, the surviving spouse retained "the right and power to revoke, change[,] and amend . . . the designation of the [UNM] Foundation as a beneficiary of the [t]rust [e]state."

As for the Donors' lifetime contributions, the 1994 Agreement provided that these contributions were irrevocable, and in a section titled "Lifetime Gifts[,]" provided that the contributions were to be "invested, reinvested[,] and accumulated by the [UNM] Foundation until the death of the last to die of the Donors." Upon the death of both Plaintiff and his wife, the 1994 Agreement directed that the lifetime contributions were to be added to the bequest made to the UNM Foundation under the separate trust agreement and used to establish a fund to "endow a teaching chair of evidence and procedure at the [l]aw [s]chool" named after Plaintiff and his wife.

The 1994 Agreement included a section describing Plaintiff's thoughts on the content of evidence courses to be taught at the law school once the teaching chair was established but expressly stated that these were not requirements and did "not impose any duty upon the [UNM] Foundation or [l]aw [s]chool." The 1994 Agreement further expressed Plaintiff's "desire and intent that the [f]und" created by the 1994 Agreement "be established as an endowment." And it provided that Defendant UNM Foundation "shall be the absolute owner of the [f]und, subject to the restrictions, terms[,] and conditions" set forth in the 1994 Agreement and "shall have a duty to use reasonable care in investing and maintaining the [f]und."

**The 2002 Amendment**

Plaintiff's wife had passed away by the time the 2002 Amendment to the 1994 Agreement was executed. The 2002 Amendment expressly indicated that it was

executed to amend the 1994 Agreement and referred to Plaintiff as trustee of the separate trust agreement discussed above. The 2002 Amendment changed Plaintiff's plan, based on the 1994 Agreement, to fund the teaching chair upon Plaintiff's death. Instead, it provided that Plaintiff would make an immediate contribution to UNM on January 1, 2003, of a portfolio of state and municipal government bonds valued at approximately $2.1 million plus additional cash. The 2002 Amendment directed that promptly after January 1, 2003, the UNM Foundation was to deposit the conveyed assets in a fund established in Plaintiff's name (the fund) "to endow a teaching chair of evidence and procedure." The fund was to be segregated from the UNM Foundation's consolidated investment fund and lodged with an outside investment firm, with the UNM Foundation named as the owner. The fund was to be managed in accordance with an investment policy attached to the 2002 Amendment. The amendment directed that "[t]he income from [Plaintiff's] endowed fund for the [p]rofessorship is limited for use by the [l]aw [s]chool to provide funding for the [p]rofessorship, including paying all or a portion of the salary of the faculty member or the expenses necessary to support associated academic activities." In addition, the 2002 Amendment provided that Plaintiff's annual lifetime contributions from 1991 through 2002 were to be held by the UNM Foundation in its consolidated investment fund and used to generate annual distributions to the law school to support the teaching chair. The record reveals that Plaintiff's conveyance of assets based on the

2002 Amendment occurred in 2003. Specifically, Plaintiff made an immediate conveyance of assets totaling approximately $2.187 million to the UNM Foundation on January 1, 2003.

**The 2003 Working Paper**

The 2003 Working Paper was executed to amend the investment policy that was attached to the 2002 Amendment. The 2003 Working Paper clarified what assets were included in the "principal" as that term was used in the 2002 Amendment. The 2003 Working Paper limited the UNM Foundation's ability to sell bonds from Plaintiff's "initial charitable contribution," and it reiterated that Plaintiff's fund was to remain segregated from the UNM Foundation's consolidated investment fund. It further provided that the UNM Foundation would return certain principal lost as a result of earlier transactions. And finally, the 2003 Working Paper provided that the law school, as "beneficiary[,]" was to be given an opportunity to participate in any investment decision related to Plaintiff's fund and that the UNM Foundation would not take any action relating to Plaintiff's fund over the law school's objection.

**The 2004 Amendment**

In September 2004, by letter agreement, the parties amended the 1994 Agreement once more. The 2004 Amendment, sent in the form of a letter from UNM to Plaintiff, was in response to Plaintiff's May 2004 letter to UNM in which Plaintiff had expressed concerns regarding the investment of Plaintiff's fund and requested

13

certain modifications to the investment. The UNM Foundation, in partnership with the law school, stated that it "is committed to administering [Plaintiff's f]und as [he] intend[ed]," and it indicated that the UNM Foundation had "agreed to depart from its usual investment practice with respect to [Plaintiff's f]und." The amendment accepted the modifications sought by Plaintiff in his May 2004 letter.

**b.      The Documents That Plaintiff Asserts the District Court Should Have Considered**

Plaintiff placed several documents in the record with his complaint and as attachments to his affidavit in response to Defendants' summary judgment motion. As noted earlier, the documents included the executed agreements and amendments between the parties, correspondence between Plaintiff and various UNM officials, call reports, investment records, and a sixty-page affidavit written by Plaintiff that included a preamble discussing Thomas Paine. The earliest documents were from the late 1980s and thus, predated the 1994 Agreement, while most of the other documents came in the intervening years between the 1994 Agreement and the two subsequent amendments, which came eight and ten years later, respectively. For purposes of our analysis, we need not describe the majority of these documents in detail. We note that Plaintiff's correspondence with UNM included a number of statements by him that the conveyances were made "in trust" and imposed trust obligations on UNM.

**c.      The District Court's Ruling on Extrinsic Evidence**

14

We turn now to consider Plaintiff's argument on appeal that the district court erroneously failed to consider "extrinsic evidence" in the form of his affidavit and the other documents submitted by Plaintiff, which he asserts established his intent to create a public charitable trust. We glean from Plaintiff's brief in chief three principal arguments as to why this extrinsic evidence was admissible: first, that extrinsic evidence is generally admissible to determine the settlor's intent; second, that rules of contract interpretation in New Mexico require courts to look beyond the four corners of the instrument and review extrinsic evidence of surrounding circumstances, the parties' conduct, and oral expressions in order to interpret the contract; and third, that the four documents the court found controlling did not form a fully integrated agreement. In response, Defendants argue that the parol-evidence rule bars admission of the extrinsic evidence in this case.

Although both parties agree that the Restatement of Trusts applies in this case, neither party's briefing on appeal adequately states the law on the use of extrinsic evidence in determining a settlor's intention to create a trust. We therefore begin by explaining the basic principles that apply here. As we have already stated, a "trust is created only if the settlor properly manifests an intention to create a trust relationship." Restatement (Third) of Trusts § 13, at 206; *see* 1 Austin W. Scott, *Scott & Ascher on Trusts* § 4.2, at 180 (5th ed. 2008) ("The question in each case is whether the settlor has manifested the intention to . . . impose upon himself or herself,

15

or upon the transferee, equitable duties to deal with property for the benefit of another."). Restatement (Third) of Trusts provides that "[i]n interpreting the words and conduct of property owners [to ascertain whether a property owner had the requisite intention to create a trust], circumstances that shed light upon their intentions are relevant . . . [such as a]cts or communications prior to and subsequent to, as well as those contemporaneous with, the transfer or other act that is claimed to create a trust." Restatement (Third) of Trusts § 13 cmt. b, at 207-08; *see* 1 Scott, *supra*, § 4.1, at 177. However, this type of extrinsic evidence is "admissible *except* when excluded by the parol-evidence rule . . . , by a statute of frauds or of wills, or some other rule of law." Restatement (Third) of Trusts § 13, cmt. b, at 207-08 (emphasis added).

"Under the parol-evidence rule, where the manifestation of the settlor's intention is integrated in a writing, that is, if a written instrument is adopted by the settlor as the complete expression of the settlor's intention, extrinsic evidence is not admissible to contradict or vary the terms of that instrument in the absence of fraud, duress, undue influence, mistake, or other ground for reformation or recission."[2] Restatement (Third) of Trusts § 21 cmt. a, at 322; *see also* 5 Scott, *supra*, § 4.5, at 209. Thus, as the Restatement (Third) of Trusts expresses,

(1) . . . if the owner of property:

---

[2] No allegation of fraud, duress, undue influence, mistake, or other equitable ground for reformation or recission has been made in this case.

16

(a) transfers it inter vivos to another person by a writing that states that the transferee is to take the property for the transferee's own benefit, extrinsic evidence may not be used to show that the transferee was intended to hold the property in trust[.]

Restatement (Third) of Trusts § 21(1)(a), at 321; *see* 1 Scott, *supra*, § 4.5, at 210 (providing that extrinsic evidence is inadmissible under the parol-evidence rule "to show that the grantor intended for the grantee to take the property outright, if the instrument of transfer clearly states that the grantee is to hold the property in trust"). If, however, the "writing is an incomplete expression of the settlor's intention or if the meaning of the writing is ambiguous or otherwise uncertain, evidence of the circumstances and other indications of the transferor's intent are admissible to complete the terms of the writing or to clarify or ascertain its meaning[.]" Restatement (Third) of Trusts § 21 cmt. a, at 322; *see* 1 Scott, *supra*, § 4.5, at 210 (noting that "if the instrument is ambiguous, extrinsic evidence is admissible to determine its meaning"). As the Restatement states:

(2) If the owner of property transfers it inter vivos to another person by a writing that does not state either that the transferee is to take the property for the transferor's own benefit or that the transferee is to hold it upon a particular trust, . . . extrinsic evidence may be used to show that the transferee was to hold the property in trust for either the transferor or one or more third parties[.]

Restatement (Third) of Trusts § 21(2), at 321.

The critical inquiry therefore is whether Plaintiff raised any argument that the four documents considered controlling by the district court were ambiguous or were

17

otherwise not fully integrated on the issue of Plaintiff's intent. At the outset, we observe that Plaintiff failed to articulate either in his response to the summary judgment motion or at the hearing in the district court that there was any type of ambiguity in the 1994 Agreement, the 2002 and 2004 Amendments, or the 2003 Working Paper. The bulk of Plaintiff's argument at the hearing was a summary of each of the exhibits that were attached to his affidavit. His argument included references to the four documents but apparently only in the context of his overall contention that all of the documents, including these four, established the material facts supporting the existence of a trust. After the district court indicated that it found only the 1994 Agreement and its amendments controlling, Plaintiff failed to argue that there was any ambiguity in these documents, or for that matter, that the other documentary evidence established an ambiguity in the documents. Instead, Plaintiff continued to press to have all of the documents considered, rather than show how the other documents filled or clarified some aspect of the Donor's intent not adequately included in the documents utilized by the court. The district court therefore was presented with no legal basis on grounds of ambiguity to consider the remaining evidence raised by Plaintiff.

On appeal, Plaintiff has raised what we understand to be an ambiguity argument for the first time in his reply brief. Plaintiff argues that the 1994 Agreement is ambiguous as to whether it superceded an earlier 1991 agreement between Plaintiff

18

and UNM. However, as compelling as this argument might be, Plaintiff failed to raise it in the district court or in his brief in chief. We therefore decline to address it. *See Kersey v. Hatch*, 2010-NMSC-020, ¶ 19, 148 N.M. 381, 237 P.3d 683 (refusing to address an argument raised for the first time in a reply brief); *see also Nellis v. Farmers Ins. Co. of Ariz.*, 2012-NMCA-020, ¶ 23, 272 P.3d 143 (emphasizing that "[w]e review the case litigated below, not the case that is fleshed out for the first time on appeal" (internal quotation marks and citation omitted)).

Turning to the question of whether the 1994 Agreement or its amendments were not fully integrated, Plaintiff again failed to adequately raise an integration argument. On appeal, Defendants initially challenge Plaintiff's preservation of an integration argument, and Plaintiff has failed to explain in his reply brief where he raised the integration argument in the proceedings below. Although this Court will not search the record for evidence of preservation, *In re Norwest Bank*, 2003-NMCA-128, ¶ 30, 134 N.M. 516, 80 P.3d 98, our review of the summary judgment hearing in this case, however, revealed that Plaintiff briefly made an integration argument at the summary judgment hearing. In response to the district court's questioning, Plaintiff noted that the 1994 Agreement and its amendments failed to include integration clauses and then summarily stated, without citation to supporting authority, that all exhibits attached to the affidavit were part of the complete agreement to establish a public charitable

19

trust. This was the extent of Plaintiff's argument on integration, and thus, it was at best, barely preserved.

On appeal, Plaintiff renews his integration argument, contending that the relevant agreements were not completely integrated. We understand Plaintiff's argument to be that since the 1994 Agreement, the 2002 and 2004 Amendments, and the 2003 Working Paper do not include a customary integration clause, "[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible" to establish whether the 1994 Agreement and the three other documents were completely integrated. We are not persuaded. As Defendants point out, the lack of an integration clause is not conclusive on the question of whether a writing, or writings, are fully integrated. *See* 6 Peter Linzer, *Corbin on Contracts* § 25.7, at 60 (Joseph M. Perillo ed., 2010) (stating that is it possible to find a contract fully integrated in the absence of a merger clause). Moreover, we note the Restatement (Second) of Contract's view that "a written agreement complete on its face is taken to be an integrated agreement in the absence of contrary evidence." Restatement (Second) of Contracts § 209 cmt. c, at 116 (1981); *id.* (3), at 115. Aside from pointing to the lack of integration clauses, Plaintiff has failed to articulate any other basis for why the 1994 Agreement along with its subsequent amendments do not constitute a final expression of the terms of the agreement between Plaintiff and UNM. We therefore do not consider this argument further. *See Headley v. Morgan Mgmt. Corp.*,

2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (noting this Court has no duty to review an argument that is not adequately developed or to guess at what a party's argument might be).

In response to Defendants' argument that the parol-evidence rule applies in this case, Plaintiff appears to rely upon principles of contract interpretation under New Mexico law. Both in his reply brief and at oral argument before this Court, Plaintiff argued that under *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993), and its progeny, the parol-evidence rule does not bar admission of extrinsic evidence to determine the circumstances surrounding the contract or to explain the terms of the agreement. *See, e.g.*, *Empire W. Cos. v. Albuquerque Testing Labs., Inc.*, 110 N.M. 790, 794, 800 P.2d 725, 729 (1990) (observing that while the parol-evidence rule "precludes the admission of prior negotiations or extrinsic evidence offered to contradict or vary the terms of a complete, integrated, written agreement[,] . . . [e]vidence extrinsic to a written contract is properly admitted to determine the circumstances under which the parties contracted and the purpose of the contract." (internal quotation marks and citations omitted); *Ruggles v. Ruggles*, 116 N.M. 52, 69, 860 P.2d 182, 199 (1993) (stating that "[w]hile extrinsic evidence is inadmissible to contradict, and perhaps even to supplement, the terms of an integrated agreement, it is admissible to *explain* the terms of the agreement"). However, Plaintiff failed to raise this argument below and failed to show how the extrinsic evidence aided in

21

interpreting the language and terms of the 1994 Agreement or its amendments. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) (explaining that since the parol-evidence rule bars the admission of extrinsic evidence "to contradict [or] perhaps even to supplement the writing" but "should not bar introduction of evidence to explain terms[,] . . . [t]he operative question [for lower courts] then becomes whether the evidence is offered to contradict the writing or to aid in its interpretation"). Based on the foregoing, we conclude that Plaintiff failed to articulate any legal basis for the district court to consider additional documents aside from those it found to be controlling.

Plaintiff also summarily raises a novation argument on appeal, which we agree with Defendants was not raised below. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. Although Plaintiff argues in his reply brief that he preserved this argument in his response to Defendants' summary judgment motion and at the summary judgment hearing below, he fails to point out specifically where in the record or the hearing transcript that he raised the issue. Plaintiff attempts to overcome the lack of preservation by arguing that the district court cut off his argument and that the court made its ruling without allowing full argument. We disagree with this

22

characterization of the hearing as our review indicates that the district court afforded Plaintiff an opportunity to present his argument in full and also permitted Plaintiff to respond to the court's questions. We therefore do not consider this issue.

**4.      The District Court's Ruling on the Merits**

We turn now to consider Plaintiff's argument that the district court erred in determining that the 1994 Agreement, the 2002 and 2004 Amendments, and the 2003 Working Paper did not give rise to a public charitable trust. Plaintiff initially argues that genuine issues of material fact exist, thereby making summary judgment improper as a matter of law. We are not persuaded. Similar to Plaintiff's treatment of the other arguments he raises on appeal, Plaintiff makes only generalized statements regarding the existence of material facts, without pointing out what the specific disputed facts are. Instead, Plaintiff reiterates that his affidavit and the other documentary evidence provide the underlying facts supporting the creation of a trust. However, "[g]eneral assertions of the existence of a triable issue are insufficient to overcome summary judgment on appeal." *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 35, 145 N.M. 186, 195 P.3d 353; *see Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 803, 780 P.2d 627, 629 (1989) ("[M]ere argument or bare contentions of the existence of a material issue of fact is insufficient."). We therefore do not disturb the district court's determination that there were no genuine issues of fact and that it could therefore proceed to decide whether summary judgment was proper as a matter of law.

Plaintiff's final argument on appeal is that summary judgment was improperly granted because the 2004 Amendment supports his intention to create a public charitable trust. Plaintiff alleges that his May 2004 letter to UNM essentially declared that his contributions were in trust and imposed trust obligations on UNM. Because the 2004 Amendment arose in reply to Plaintiff's May 2004 letter and stated that UNM would administer Plaintiff's funds "as [Plaintiff] intend[s]," Plaintiff argues that the 2004 Amendment confirms that UNM knew that Plaintiff intended for a public charitable trust to result from his contributions. We disagree. Even assuming that UNM was aware in 2004 that Plaintiff intended to create a trust and impose trust-type obligations on UNM, Plaintiff fails to indicate how that intent was manifested in the language of the 2004 Amendment. *See Hansen v. Ford Motor Co.*, 120 N.M. 203, 206, 900 P.2d 952, 955 (1995) (determining that a party's statements of unilateral, subjective intent, without more, are insufficient to establish ambiguity in light of clear contract language). Plaintiff should have, but failed to, argue on appeal how the 2004 Amendment manifested an intention to create a trust or otherwise established a trust based on trust principles. We do not review the district court's ruling on the merits any further because the foregoing argument was Plaintiff's sole assertion of error on the district court's ruling on the merits.

**CONCLUSION**

24

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**RODERICK T. KENNEDY, Judge**